FILED IN OPEN COURT
U.S.D.C. - Atlanta

DEC 19 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| United States of America<br><br>v.<br><br>Matthew Neet | Criminal Information<br><br>No. 1:25-cr-554 |

The United States Attorney charges that:

### Wire Fraud
### (18 U.S.C. § 1343)

1. From in or about September 2021, and continuing until at least in or about October 2024, in the Northern District of Georgia and elsewhere, the defendant, **MATTHEW NEET**, did knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and by omissions of material facts, well knowing and having reason to know that said pretenses were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material, and in so doing, with the intent to defraud, caused interstate wire communications to be made, in furtherance of the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

### Manner and Means

2. **NEET** defrauded investors and college football enthusiasts out of money through offering (i) fraudulent property investment opportunities, including purported properties located in Costa Rica, when he had no intention of actually investing the funds he received; and (ii) tickets for sale for college football games, including tickets for University of Georgia ("UGA") football, when he had no intention of providing tickets. When individuals gave **NEET** money for the investment opportunities or college football tickets, he used the money for his own purposes. In total, **NEET** defrauded victims out of approximately $942,729.91.

*Fraudulent Property Investment Opportunities*

3. **NEET**, through emails and other electronic communications, defrauded investors out of money by falsely and fraudulently claiming that money given to him would be used to purchase property, including property in Costa Rica. In reality, **NEET** knew full well at the time of seeking and obtaining the money that he had no intention of purchasing property and, instead, intended to keep the investor money for himself. Through these false and fraudulent representations, **NEET** defrauded five victims out of a total of approximately $885,438.91.

4. For example, **NEET** defrauded victim J.H. 1 and J.H. 1's son, victim J.H. 2:

    a. J.H. 1 and J.H. 2 owned COMPANY-1.

    b. In or about March 2023, **NEET** told J.H. 1, J.H. 2, and others about a purported investment opportunity in teak/timberland in Costa Rica. J.H. 1 and J.H. 2 agreed to invest with **NEET** through COMPANY-1.

    c. On or about March 31, 2023, **NEET** emailed J.H. 1 a partnership agreement for CR Timber Group. CR Timber Group was supposed to be the new entity that purchased the teak/timberland in Costa Rica. Based on the partnership agreement, **NEET** and COMPANY-1 each owned 25% and two other investors owned the remaining 50% of CR Timber Group. The partnership agreement required each investor to contribute $215,000 to CR Timber Group.

    d. On or about March 31, 2023, **NEET** emailed J.H. 2 and requested that COMPANY-1 wire $64,500 to a Truist Bank account provided by **NEET** in the name of Green Pig Land Partners with an account number ending in 7387 ("Truist #7387"). According to **NEET**, (i) Green Pig Land Partners was owned by **NEET** and J.P., (ii) the $64,500 was needed for "earnest money escrow payments," (iii) **NEET** would open a bank account in Costa Rica for CR Timber Group and provide access to the account to each investor, and (iv) **NEET** planned to use the Costa Rica bank account to deposit timber proceeds and pay for expenses related to CR Timber Group.

e. **NEET** sent the March 31, 2023 email to J.H. 2 knowing full well at the time that his claims in the email were false and fraudulent and that he would be using the money for his own purposes, not for the agreed-upon investment.

f. On or about March 31, 2023, J.H. 1 and J.H 2, relying on **NEET's** materially false and fraudulent representations, caused COMPANY-1 to wire $64,500 to Truist #7387.

g. After receiving COMPANY-1's $64,500 wire, **NEET** used the funds by transferring $17,000 to himself, paying $20,000 to J.P., and paying over $25,000 in personal expenses.

h. On or about July 17, 2023, J.H. 1 and J.H 2, relying on **NEET's** materially false and fraudulent representations, caused COMPANY-1 to wire another $150,500 to Truist #7387. The $150,500 wire was made under the belief that it would complete COMPANY-1's $215,000 contribution to CR Timber Group per the partnership agreement.

i. After receiving COMPANY-1's $150,500 wire, **NEET** used the funds by transferring over $25,000 to himself, paying $30,150 to J.P., and paying over $73,000 in personal expenses and expenses unrelated to any teak/timberland property in Costa Rica.

j. In August 2023, **NEET** falsely and fraudulently told J.H. 1 and J.H. 2 he needed additional funds to pay for the construction

4

      of roads and bridges on the teak/timberland property in Costa Rica.

k. On or about August 10, 2023, J.H. 1 and J.H 2, relying on **NEET's** materially false and fraudulent representations, caused COMPANY-1 to wire $9,200 to Truist #7387.

*College Football Tickets*

5. **NEET**, through emails and other electronic communications, defrauded individuals seeking college football tickets out of money by falsely and fraudulently claiming that he would provide college football tickets in exchange for money. In reality, **NEET** well knew at the time of offering college football tickets for sale and accepting money from individuals seeking college football tickets that he had no intention of providing the promised college football tickets. Through these false and fraudulent representations, **NEET** defrauded 19 victims out of a total of $57,291.

6. For example, **NEET** defrauded victims G.H. and W.G.:

a. In or about May 2024, **NEET** offered to sell G.H. four tickets to all the UGA home football games for the 2024 college football season for $2,800. **NEET** also offered to sell G.H. four tickets to UGA's road football games versus the University of Alabama, University of Texas, and University of Mississippi for the 2024

      football season for $1,200 in total. G.H. agreed to purchase the tickets from **NEET**.

b. On or about May 23, 2024, G.H. wired $4,000 to **NEET's** personal bank account at Bank of America.

c. **NEET** never provided the football tickets to G.H. or refunded any of G.H.'s money.

d. In or about May 2024, **NEET** offered to sell victim W.G. four tickets to all the UGA home football games for the 2024 college football season for $3,000. **NEET** also offered to sell W.G. tickets to UGA's road football games versus the University of Alabama (four tickets), University of Texas (four tickets), and University of Mississippi (eight tickets) for the 2024 football season for $1,600 in total. W.G. agreed to purchase all the tickets from **NEET**.

e. On or about May 18, 2024, W.G. sent three payments for $1,050, $3,150, and $400 to **NEET's** Venmo account.

f. **NEET** never provided the football tickets to W.G. or refunded any of W.G.'s money.

### Execution of the Scheme

7. On or about March 31, 2023, in the Northern District of Georgia and elsewhere, the defendant, **MATTHEW NEET**, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, and for obtaining money and property by means of materially false

6

and fraudulent pretenses, representations, promises, and omissions, with intent to defraud, did cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, that is, a $64,500 wire from COMPANY-1 to Green Pig Land Partners.

All in violation of Title 18, United States Code, Section 1343.

## Forfeiture

8. Upon conviction of the offense alleged in this Information, the defendant, **MATTHEW NEET**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of said violations, including, but not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in this Information.

9. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty,

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

THEODORE S. HERTZBERG
*United States Attorney*

SAMIR KAUSHAL
*Assistant United States Attorney*
Georgia Bar No. 935285

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181